**UNITED STATES ex rel. LICTATA v. HUGHES, Commissioner of Immigration, et al.**

(District Court, E. D. Pennsylvania. June 6, 1923.)

No. 9832.

Aliens ⬅︎54—Preliminary finding as to disease of immigrant not evidential.
    As respects the deportation of an immigrant for disease, such as trachoma, after the inspection and preliminary examination of the immigrant the immigrant has a right to a fact finding by the Medical Board, and a tentative finding on the preliminary inspection will not justify an order of deportation, nor may such preliminary finding be treated as conclusive on the Medical Board of the fact of disease, as that board must make its finding independently of the examiners, nor has such preliminary finding any evidential value as a finding.

Habeas Corpus. Proceeding by the United States, on the relation of Guisippina Lictata, against James L. Hughes, Commissioner of Immigration, Port of Philadelphia, and another. Relator discharged, on condition of giving bond.

Adrian Bonnelly, of Philadelphia, Pa., for plaintiff.
George W. Coles, U. S. Atty., and Robert V. Bolger, Asst. U. S. Atty., both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. This case concerns human liberty. The relator has been ordered deported. The only facts which could justify the order are that she is likely to become a public charge or

is afflicted with trachoma, a contagious disease. The facts are not in controversy, and are found, and indeed admitted at bar, to be as follows: (1) She is not likely to become a public charge. (2) She is not suffering from trachoma.

### The Question.

Why, then, should she be deported?

### Discussion.

The above fact situation makes it clear that the case is one which is best dealt with through administrative action. Every opportunity has been given for this by the continuance of the hearing from time to time in order, among other reasons, to make sure of the fact that no just cause for deportation existed. Those concerned, however, have expressed the wish that the court should take the responsibility by asking that an order be made. A consequence of the repeated hearings and the desultory manner in which they have been conducted, no orderly method of a development of the facts has been followed and no record of all the evidence made. The fact findings herein made are almost wholly made from admissions at the bar of the court. There is really no controversy over the facts; offers to establish them being forestalled by the admissions.

The principles of law involved are well settled. Congress has not confided to any official, administrative or judicial, the arbitrary power to deport any one from the territory of the United States. Admission to our shores, however, is not a right, but a privilege, which Congress can grant or withhold at its pleasure, and the terms and conditions upon which the privilege is granted have been defined with elaborate care and expanded into a system which is complete in itself.

So far as concerns this case, Congress has provided that any intending immigrant who is likely to become a public charge may be deported, and any one afflicted with trachoma must be. The basis of the order in consequence must be one or the other or both these facts. As it is the fact which excludes, Congress has made careful provision for a means of having the fact determined, and has created a tribunal by which the required fact findings shall be made. It follows that no other tribunal, judicial or otherwise has authority to make the findings or power to revise those made by the tribunal to which Congress has committed this duty. For reasons which lie on the surface, Congress did not impose this duty upon the courts, and for this all concerned feel duly grateful, and surely none would desire to have it otherwise. The power of a writ of habeas corpus, however, is invoked only when human liberty is at stake; and no court can evade its responsibility when the right to liberty is denied. The limit of duty, however, and of power as well, is marked by the line of what is in accordance with the law.

The inquiry in the instant case is whether this relator has the right to her liberty, and she has unless this order of deportation has been made in accordance with law. The law, so far as affects the present case, may be summarized as providing, as already stated, that any intending immigrant, who is likely to become a public charge, may be

deported, and any one who has trachoma must be. The administration of this law is committed generally to the Department of Labor; the special duty of inspection and examination being performed by examiners and a corps of trained medical advisers. The machinery provided is that there shall first be an inspection and preliminary examination. The required fact findings are made, but these are merely tentative, and are conclusive neither of the acceptance or rejection of the immigrant, although, if not brought in question, they become final.

Trachoma is a disease, the presence of which commands deportation, as those afflicted with it belong to the excluded class. The likelihood of becoming a public charge may justify such order in the discretion, finally, of the Secretary of Labor. If there is a finding of trachoma at this preliminary inspection, the applicant has the right to a trial to have the fact determined by a medical board. There is no provision for a review by the courts of the decision reached, nor can any court retry the question of fact, if the right of trial given by the act of Congress is allowed the applicant. This has so, many times been determined by this and other courts that the citation of cases is uncalled for. The relator had by law, however, the right to the trial mentioned, and she cannot be lawfully deported without the fact finding against her of the medical board. A tentative finding on the preliminary inspection will not justify the order. The record disclosed that such tentative finding was made, and that a trial was in due course demanded. It further showed that at the trial the board had regarded this tentative finding as conclusive, and on this had certified the fact, and the order of deportation followed. This appeared at the return of the writ of habeas corpus, and it was argued that this tentative finding was at least evidence, and that this preliminary evidence was properly persuasive, and upon it the board could make its finding. The effect of this is to deprive the relator of all the benefits of the trial to which Congress has given her the right. This preliminary finding had in it very little of persuasiveness of the real fact.

There is a law of the United States which in effect imposes a fine upon the transportation company which brings to our shores an immigrant who has a contagious disease, and requires an inspection at the port of embarkation. The preliminary examiners are further required to certify the fact, so that this fine can be imposed. In the same paper and on the same evidence they certified, in exculpation of the transportation company, that the relator did not have trachoma, but that she did have it so as to order her deportation. Such a finding may be understood and explained, but is in itself no evidence of the main fact. Counsel for the United States sought to explain it on the theory that the relator had trachoma on her arrival, but did not have it when accepted on board the ship. This explanation cannot be accepted, however, because trachoma is a chronic trouble, and so rarely acute that the latter may be said never to exist. Its symptoms appear upon inspection, and, if not visually evident, are not present. Upon this we can speak with confidence, because we had the benefit of the opinion of Dr. L. Webster Fox, who, having been in the government service in the alkali plains of the West, and among the Indian tribes, who are

peculiarly subject to this disease, has had a training and experience in trachoma cases which few, if any, other living specialists have enjoyed.

There are many eye troubles which may be mistaken for trachoma, but no case of true trachoma would develop during an ocean voyage, or exist, so as to escape detection at the commencement of the voyage, and be open to detection at its end. The hearing upon the writ was in consequence continued, with the suggestion that the relator be placed under treatment at the Wills Eye Hospital, where she could be under observation, and the real fact become known, and she could then be given the trial which is her legal right, and the fact found. This was done, and the fact that the relator is not a sufferer from trachoma has been established beyond controversy.

We have said that the apparently contradictory finding after the preliminary inspection could be explained. The explanation doubtless is that, recognizing that the finding was merely tentative, the officials did not feel justified in passing the applicant in face of the fact that she might have trachoma, reserving the real decision until she had been longer under observation. At the same time they did not feel justified in finding that the transportation company should have detected a disease which might not exist. In other words, they put themselves on the safe side of both questions. There was no injustice in this, because the finding of trachoma was merely tentative. To make such a finding conclusive, however, and on the strength of it to deny the relator the benefit of a real finding, would be the rankest injustice to her.

The position of the government now is that the medical board may make the finding which deports the relator on the evidence alone of this preliminary finding, which is to be treated as conclusive of the fact, and the relator be deported, although she admittedly does not belong to the excluded class. In this they are acting without authority of law, because on demand made the board must make the finding independently of the examiners. The question, as we understand it, which the government wishes to have judicially answered, is whether this preliminary finding is evidence from which alone the board may certify the fact finding which will deport the relator, no matter what the real fact may be. The answer is in the negative. The preliminary finding is no more evidence of the fact than a true bill of indictment is evidence of guilt. The board must find the fact, and the preliminary tentative finding has no evidential value as a finding. In other words, the fact must be found by the board, not that it has been found by some one else.

The other finding that the relator is likely to become a public charge is admittedly purely perfunctory, but that the public may be fully protected, the relator is required to give bond in the sum of $1,000 that she will not become a public charge. Upon such bond, with surety, and conditions acceptable to the district attorney, or otherwise to be approved by the court, being filed of record, the relator is discharged without day.